UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

E. WAYNE MOSLEY,

Plaintiff,

v.     6:12-cv-90

MEADOWS REGIONAL MEDICAL
CENTER; ALAN KENT; and HOWARD
HOLMAN,

Defendants.

## ORDER

Before the Court is Meadows Regional Medical Center's unopposed[1] Motion for Summary Judgment. ECF No. 23. Meadows argues that (1) collateral estoppel bars Mosley's claims under the Servicemembers Civil Relief Act ("SCRA"); (2) the claims fail as a matter of law; and (3) the applicable statute of limitations has expired. *Id.* The Court agrees Mosley's claims fail as a matter of law and therefore **GRANTS** Meadows's motion.

### I.     BACKGROUND

In June 2011 Meadows enticed Mosley to come work in south Georgia as an orthopedic surgeon. ECF No. 1-1 at 2. Their employment agreement[2] stated that Meadows would make guaranteed income payments to Mosley each month if his medical practice income failed to reach a defined threshold. *Id.* at 6. Those payments began in July 2011, with the last payment ultimately made in April 2004. ECF No. 23-1 at 2. In exchange for the payments, the agreement required Mosley to provide access to all bookkeeping and records associated with his medical practice. ECF No. 1-1 at 12.

During the term of his contract with Meadows, Mosley deployed with the United States Army, serving in Afghanistan from March-August 2003. ECF Nos. 23-1 at 2; 1 at 2. Meadows granted Mosley leave during that time. ECF No. 23-1 at 2. No judicial or administrative proceedings were commenced or ongoing against Mosley during his time of service.

The Mosley-Meadows relationship soured for reasons somewhat unknown. On March 29, 2004, Meadows notified Mosley that it considered him in default of the agreement for continuous refusal to open his books for examination. *Id.*; ECF No. 23-3 at 1. Mosley received his last payment, for services rendered in December 2002 and February 2003, from Meadows in April 2004. ECF No. 23-1 at 2.

Mosley and Meadows attempted for several years to resolve their dispute, to no avail. *Id.* Eventually Meadows filed a demand for arbitration on March 4, 2009. *Id.*

In his answer to Meadows's arbitration complaint, Mosley asserted the SCRA as an affirmative defense. ECF No. 23-5 at 1. The parties then proceeded to engage in discovery and briefing of their respective arguments, including those under the SCRA. ECF Nos. 23-6; 23-7. Ultimately, the arbitrator, a

---

[1] Mosley had until June 10, 2013 to file a response in opposition to this motion. He never did.

[2] Strictly speaking, Mosley operated as an independent contractor. Nevertheless, the agreement he struck with Meadows made possible his work in the Vidalia, Georgia area. Because it has no legal significance in this case whether Mosley was an employee of Meadows or whether he ran a separate ship, the Court elects to refer to the agreement as an employment agreement, as that terms best captures the essence of the pact if not its legal status.

retired Fourth Circuit judge, dismissed all of Meadows's claims *and* Mosley's counterclaims on April 14, 2010. ECF No. 23-8. Neither party moved to have the award, or lack thereof, confirmed.

Mosley then filed this action on September 28, 2012, asserting various claims under the SCRA. ECF No. 1. He argued that (1) Meadows's decision to terminate the contract violated § 518; (2) Meadows penalized him for his military service by "refusing to satisfy the remainder of the contract" in violation of § 523; and (3) unilaterally terminating the agreement without a court order violated § 532. *Id.* at 3-4.

In the present motion, Meadows asserts three theories of why Mosley's claims fail. First, Meadows argues that the arbitrator already decided Mosley's SCRA claims and thus that he is collaterally estopped from pursuing them in this Court. *See* ECF No. 23-2 at 4. Second, Meadows addresses the claims on the merits and asserts they fail as a matter of law. *See id.* at 7-9. Lastly, Meadows argues the applicable statute of limitations bars all Mosley's claims. *See id.* at 9-10.

Because the Court prefers to address the merits of claims when possible, particularly when granting summary judgment against a pro se plaintiff, it addresses Meadows's arguments under the SCRA first. And because no claim survives that analysis, no need exists to address Meadows collateral estoppel and statute of limitations arguments.

## II. DISCUSSION

The Court will address Mosley's SCRA claims in order of ascending section number—first § 518, then § 523, and finally § 532.

### A. 50 U.S.C. § 518

Section 518 prohibits revocation of credit due to a debtor's military service in response to application for postponement of payment by a service member debtor. Mosley believes the guaranteed income payments constituted a loan from Meadows and that terminating the agreement constituted a revocation of credit in violation of § 518. ECF No. 1 at 4. Even if the agreement was a loan, Mosley's claim still fails.

Section 518 prohibits a service member's application for a postponement of debt from providing the sole basis for, among other things, revocation of credit. But Mosley never applied for any postponement of what he considers his debt to Meadows. Meadows, moreover, presents evidence, uncontroverted in any way by Mosley, of another reason for terminating its agreement with Mosley; namely, that Mosley never allowed Meadows to examine his medical practice's books as required by the agreement. *See* ECF No. 23-3 at 1. Either reason alone takes Mosley's claim outside § 518's ambit. Together they assure the claim fails.

### B. 50 U.S.C. § 523

Section 523(a) states that "[w]hen an action for compliance with the terms of a contract is stayed pursuant to [the SCRA], a penalty shall not accrue for failure to comply with the terms of the contract during the period of the stay." Section 523(b) then allows courts to reduce or waive fines and penalties assessed for a service member's failure to perform a contractual obligation if "(1) the servicemember was in military

2

service at the time the fine or penalty was incurred; and (2) the ability of the servicemember to perform the obligation was materially affected by such military service." Neither (a) nor (b) apply here.

First, no action for compliance with the agreement was ever stayed pursuant to the SCRA. *See* 50 U.S.C. § 523(a). No stay existed during which Meadows penalized Mosley for noncompliance. Section 523(a) simply does not apply.

Second, despite Mosley's proven military service during the term of his agreement with Meadows and his inability to perform his contractual obligations during his service, Mosley's § 523(b) claim nevertheless fails because Meadows never penalized him for nonperformance. When Mosley received his marching orders, Meadows, like any law abiding employer, granted Mosley leave from its medical staff. ECF No. 1 at 3. And leave cannot possibly be contorted into a penalty.

Neither can post-deployment termination of the agreement ever be a penalty Mosley incurred during military service. *See* 50 U.S.C. § 523(b)(1). Post-deployment penalty by definition cannot be a during-deployment penalty. As with § 518, so too with § 523—it does not apply.

### C. 50 U.S.C. § 532

Section 532 only applies to contracts involving real property. Mosley and Meadows entered into what is, in essence if not in strict legal fact, an employment contract. Regardless of what kind of contract it precisely was, the Mosley-Meadows agreement in no way involved real estate. This claim, like the previous two, fails.

### III. CONCLUSION

All three of Mosley's claims fail as a matter of law. The Court therefore **GRANTS** Meadows's motion for summary judgment. The Clerk is **ORDERED** to enter judgment dismissing this case.

This /7 day of June 2013.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

3